IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ANICETO BETANCOURT IV,           )
                                 )
                Plaintiff,       )      Case No. CV07-499-S-BLW
                                 )
vs.                              )      **MEMORANDUM DECISION**
                                 )      **AND ORDER**
STEVE RHODES, Canyon County      )
Deputy Coroner; DR. KRANZ; and   )
CANYON COUNTY                    )
PROSECUTOR,                      )
                                 )
                Defendants.      )
_____   )

Pending before the Court are several motions ripe for adjudication, including

a Motion for Summary Judgment filed by Defendants.  The Clerk of Court mailed

Plaintiff the Notice to Pro Se Litigants of the Summary Judgment Rule

Requirements on May 1, 2009, which informs Plaintiff of the type of showing that

must be made in response to a motion for summary judgment.  (Docket No. 51.)

Plaintiff filed an objection to the Motion for Summary Judgment on August 18,

2009.

Having fully reviewed the record, the Court finds that the decisional

process would not be significantly aided by oral argument.  Therefore, the Court

shall decide this matter on the written motions, briefs and record without oral

argument.  D. Idaho L. Civ. R. 7.1(d).  Accordingly, the Court enters the following

Order.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court shall consider the following recitation to be undisputed facts

because no admissible evidence has been brought forward to call them into

question, and thereby create a genuine issue of material fact.  On March 27, 2006,

Patrick Ciarmoli ("Ciarmoli" or "the victim") died after Plaintiff Aniceto

Betancourt ("Plaintiff") shot him six times.  Plaintiff was arrested by the Caldwell

Police Department.

The day after the shooting, on March 28, 2006, Defendant Dr. Kronz

performed an autopsy on Ciarmoli.  Defendant Steve Rhodes, Chief Deputy

Canyon County Coroner, was present during the autopsy.  The Canyon County

Prosecutors were not present at the scene of the shooting or at the autopsy.  After

the autopsy, Ciarmoli's body was given to his family for burial.  (See Affidavits in

support of Motion for Summary Judgment, Docket Nos. 10-2, 10-5, 10-7, & 10-9.)

Canyon County Deputy Prosecutor Gerald Wolff reviewed the police report

on the incident and made the decision to charge Plaintiff with first degree murder.

Mr. Wolf presented the State's case at the preliminary hearing in *State v.*

*Betancourt*, Canyon County Case No. CR06-08064, on April 24, 2006.  At the end

of the hearing, the magistrate judge found probable cause that Plaintiff shot

Ciarmoli willfully, deliberately, and with premeditation and malice aforethought.

(Affidavit of Gearld Wolf, paras. 4-5, Docket No. 50-9.)

Plaintiff's criminal trial occurred in February 2007.  Defendants Rondee

Blessing and Aaron Bazzoli prosecuted the case for Canyon County.  During the

course of trial, Rhodes misstated some of the facts.  Prosecutors attempted to

correct the misstatements by calling additional witnesses.  The jury acquitted

Plaintiff of the charges on February 26, 2007.[1]

Plaintiff alleges in this case that between the dates of March 27, 2006, and

October 21, 2007, Defendants violated his constitutional and state law rights when

they intentionally, willfully, and knowingly destroyed, concealed, and disposed of

exculpatory evidence in his criminal case.  He also alleges violations of the

Fourteenth Amendment of the United States Constitution, the Idaho Constitution,

and various Idaho statutes.  He sues Steve Rhodes, the Canyon County Deputy

Coroner; Dr. Kranz, the doctor who performed the autopsy; Rondee Blessing,

Aaron Bazzoli, and Gearld Wolff, individual Canyon County Prosecutors; and the

Canyon County Prosecutor's Office.

---

[1] Plaintiff is now incarcerated on an unrelated conviction and/or charge.

In the Initial Review Order, the Court dismissed claims against the Canyon County Coroner's Office and all § 1985 claims. The Court also notified Plaintiff that his state-law claims based on the Idaho Constitution were dismissed, and that he could not proceed under the Idaho statutes listed in his Amended Complaint unless he showed that they were intended to support a private cause of action.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A.      Standard of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

Material facts are those which may affect the outcome of the case. *See id*. at 248.

 The evidence must be viewed in the light most favorable to the non-moving

party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct

testimony of the non-movant must be believed, however implausible. *Leslie v.*

*Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is

not required to adopt unreasonable inferences from circumstantial evidence.

*McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that

apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and

convincing evidence, the issue on summary judgment is whether a reasonable jury

could conclude that clear and convincing evidence supports the claim. *Id*.

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

2001)(en banc). To carry this burden, the moving party need not introduce any

affirmative evidence (such as affidavits or deposition excerpts) but may simply

point out the absence of evidence to support the nonmoving party's case. *Fairbank*

*v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence

sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id*. (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

**B.**     **Plaintiff's Lack of a Specific Response to Summary Judgment Motion**

Plaintiff has failed to file a specific response to the Motion for Summary

Judgment.  He has been provided with the "Notice to Pro Se Litigants of the

Summary Judgment Standards" from the Clerk of Court.  (Docket No. 51.)

Plaintiff's arguments that the Motion for Summary Judgment was prematurely filed

or that discovery is not closed are rejected.  Similarly, his arguments that the

Motion violates Rule 56 and his constitutional rights lack merit.  *See Page v. Work*,

290 F.2d 323, 334 (9th Cir. 1961) (grant of summary judgment does not violate the

right to trial by jury).  Because Plaintiff is proceeding pro se, the Court has

independently researched the law and searched the record to determine whether it

contains sufficient evidence to permit Plaintiff to proceed to trial.

**C.**     **Steve Rhodes**

1.     <u>Plaintiff's Claims</u>

Plaintiff alleges that Steve Rhodes knowingly and willfully or recklessly

withheld and destroyed exculpatory evidence in the criminal case, namely the

blood and stomach contents of the victim, Mr. Ciarmoli.  Plaintiff further alleges

that Rhodes failed to conduct a drug screening test on the victim.  He further

alleges that Defendants made a conscious choice to destroy, conceal, and cover up

exculpatory evidence during the autopsy and throughout the entire case.   He

alleges that all Defendants conspired together to secure a conviction by destroying, concealing, and withholding evidence. He further alleges that he was deprived of exculpatory evidence that caused him to be falsely imprisoned.

2.     Absolute Witness Immunity for Testimony

Defendant Rhodes first argues that he is entitled to absolute witness immunity for his testimony at Plaintiff's criminal trial. The law is clear that witnesses have absolute immunity for wrongs allegedly arising from their testimony in court, even if they committed perjury. *Briscoe v. LaHue*, 460 U.S. 325, 342-345 (1983). To prevent plaintiffs from circumventing this rule by alleging a conspiracy to commit perjury, rather than perjury, the Ninth Circuit has "held that witness immunity also extends to conspiracies to commit perjury." *Paine v. City of Lompic*, 265 F.3d 975, 981 (9th Cir. 2001). Where the "alleged conspiratorial behavior is inextricably tied to [the witness's] testimony," immunity applies. *Franklin v. Terr*, 201 F.3d 1098, 1102 (9th Cir. 2000). However, trial-testimony immunity cannot be applied so broadly as to insulate investigatory activities which occurred separate from and prior to any testimony or preparation for trial testimony. *See Spurlock v. Satterfield*, 167 F.3d 995, 1004 (6th Cir. 1999).

Plaintiff has brought forward no admissible evidence showing that Defendant Rhodes would not be entitled to absolute immunity for his trial

testimony. The Court agrees with Defendant Rhodes that he is immune from suit for his testimony, even where the allegations encompass a conspiratorial purpose.

3. Investigatory Acts

Rhodes argues that he is entitled to summary judgment on Plaintiff's claims arising from Rhodes' non-testimonial investigatory acts because the body fluids and samples were not exculpatory evidence, and Rhodes did not act in bad faith. Plaintiff has not set forth a counterargument or proffered admissible evidence to oppose summary judgment.

Where evidence exculpatory to a defendant is lost or destroyed, a due process claim may arise. *Arizona v. Youngblood*, 488 U.S. 51, 57-59 (1988). The government has a duty to preserve evidence if (1) the evidence is material and exculpatory in nature, (2) the exculpatory value of the evidence is apparent before the evidence is destroyed, and (3) the defendant is unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 489 (1984). However, if the evidence is not material and exculpatory in nature but is instead "potentially useful evidence," failure to preserve the "potentially useful evidence" does not violate due process "unless a criminal defendant can show bad faith on the part of the police." *Youngblood*, 488 U.S. at 57.

Generally, evidence is "material and exculpatory" if it is clearly favorable to the accused, such as the confession of a co-defendant or a victim's criminal record supporting a defendant's claim of self-defense. *United States v. Agurs*, 427 U.S. 97, 114 (1976); *see also United States v. Brady*, 373 U.S. 83, 87 (1963). Evidence is only "potentially useful" when "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57; *see also Illinois v. Fisher*, 540 U.S. 544, 5467 (2004)

Here, clearly-existing law dictates that the body fluids and samples evidence at the heart of Plaintiff's claims was only "potentially useful" evidence because he is asserting that it could have been subjected to tests, the results of which might have shown that the victim was under the influence of drugs or alcohol and acted in an aggressive manner toward Plaintiff, leaving Plaintiff with no option to preserve his own life than to shoot the victim.

As a result, Plaintiff must show that Defendants destroyed the evidence in bad faith, rather than in "good faith and in accordance with their normal practice." *Youngblood*, 488 U.S. at 56. On this point, Defendants have come forward with admissible evidence showing that the evidence was ignored or destroyed for legitimate reasons and in accordance with normal practice in criminal investigations.

Rhodes has submitted an Affidavit, wherein he states:

> Consistent with my statutory duties (Idaho Code section 19-4301, et seq.) as Chief Deputy Coroner, the principal purpose for collecting body fluids was to assist, if necessary, in determining the cause and manner of Ciarmoli's death. It was obvious that Ciarmoli's cause of death was from multiple gunshot wounds and loss of blood. In fact, Dr. Kronz determined the cause of death to be multiple gunshot wounds and exsanguination.
>
> Since Ciarmoli's cause of death was obvious and confirmed by Dr. Kronz, it was not necessary to test the blood for the cause or manner of death. I decided to have the blood tested for communicable diseases because of the number of bystanders and emergency medical service personnel who came in contact with Ciarmoli's blood. Unfortunately, there was insufficient blood to also conduct toxicology tests. I made the choice to test for communicable diseases to protect public health.

(Affidavit of Steve Rhodes, paras. 4-5, Docket No. 50-2.)

The Canyon County Coroner's Report, prepared by Rhodes at the time of the incident, states that when Rhodes arrived at the scene of the incident, he was told that the victim had been moved by bystanders and EMS personnel, and that bystanders had performed CPR on the victim. (Exhibit B to Rhodes Affidavit, Docket No. 50-4.) The police report indicates that when police arrived at the scene, a female bystander was holding a black sweatshirt to the victim's back in an apparent attempt to slow his bleeding. (Exhibit to Wolff Affidavit, Docket No. 50-10.) Defendant Rhodes also declares that no one asked him to suppress or fabricate evidence, and he did not suppress or fabricate evidence in the case.

(Rhodes Affidavit, para. 9, Docket No. 50-2.)

This evidence from Rhodes is sufficient for the burden to shift to Plaintiff, but the Court also searched the entire record to determine whether other evidence existed to support Plaintiff's claims. Dr. Kronz, who performed the autopsy, declares that no one asked him to suppress or fabricate evidence. Dr. Kronz further declares that he did not conspire with anyone to either suppress or fabricate evidence. (Affidavit of Joseph Kronz, paras. 5-9, Docket No. 50-5.)

Rondee Blessing, the prosecutor in this case, declares by Affidavit that she did not suppress or fabricate evidence in the criminal case, nor did anyone request that she do so. Further, she declares that she did not conspire with anyone to either suppress or fabricate evidence. In addition, she states that, to her knowledge, no one from the Canyon County Prosecuting Attorney's office had a role in how the autopsy was performed, the body fluids collected, or what happened to the body fluids during autopsy. (Affidavit of Rondee Blessing, paras. 9-11, Docket No. 50-7.) Deputy Prosecutor Wolff makes the same declarations in his Affidavit. (Wolff Affidavit, Docket No. 50-9.)

As a result of the foregoing evidence, the burden shifts to Plaintiff to bring forward evidence showing that the victim's body fluids and tissue samples were ignored or destroyed in bad faith. He has presented nothing.

Upon searching the record, the Court finds there is slight evidence in the record that might support Plaintiff's theory – Rhodes made several misstatements related to the body fluid samples in his testimony at trial. He declares that the misstatements were made as a result of his lack of preparation for trial – he did not review the autopsy report or meet with the prosecutor prior to trial. (Rhodes Affidavit, para. 11, Docket No. 50-2.) He testified at trial that the decision to have the blood tested for communicable diseases was made by him and Canyon County Coroner Vicki DeGeus-Morris; Ms. Morris testified that she did not have part in that decision. Rhodes now declares that he was mistaken; it was his sole decision, but he had discussed the decision with someone. Rhodes also testified that had there been urine, it would have been tested; he now states he should have testified that had there been *sufficient* urine, it would have been tested. Rhodes also testified that vitreous fluids do not reveal whether someone is under the influence of drugs or alcohol, but now admits it would have been more accurate to say that the results of such testing are not as accurate as testing blood. (*Id.*)

The Court finds that these mistakes are not sufficient evidence to show that Rhodes chose not to test for drugs or alcohol or that he destroyed the samples *in bad faith*. Plaintiff has brought forward no evidence that Rhodes would have had any motive to purposely thwart Plaintiff's defense. The reports prepared at the time

MEMORANDUM DECISION AND ORDER 13

of the incident support Rhodes' reasons for selecting communicable-diseases testing. In addition, Rhodes' primary duty as coroner was to determine the manner of death, and he fulfilled that purpose. Further, the prosecutor took steps to correct the facts at trial, which is evidence that there was no conspiratorial purpose between prosecutors and Rhodes. (Blessing Affidavit, para. 6, Docket No. 50-7.) In summary, Rhodes has declared that he made mistakes during trial testimony as a result of ill-preparation, and the record does not reflect anything showing that the mistakes were more than negligent.

As a result of all of the foregoing, Plaintiff has failed to meet his burden to show that he has sufficient evidence to proceed to trial on the issue of whether the blood sample was destroyed and the urine sample disposed of in bad faith. Rhodes is entitled to summary judgment on the *Youngblood* claim.

**D.   Dr. Kronz**

1.   Plaintiff's Claims

Plaintiff makes essentially the same allegations against Dr. Kronz as those Plaintiff is asserting against Defendant Rhodes.

2.      <u>Trial Testimony</u>

Based on the law set forth above, Dr. Kronz is entitled to absolute immunity for his witness testimony at trial.  In addition, the Court notes that Plaintiff has not made any specific allegations regarding errors or wrongful statements in Dr. Kronz's particular testimony, and the Court sees none apparent from the evidence submitted by the parties.

3.      <u>Investigative Acts</u>

Dr. Kronz declares by Affidavit that he did not collect Ciarmoli's body fluid or samples, and had no control over the body, its disposition, or the testing and disposition of the body fluids.  His sole function was to determine the cause of death, which he did.  (Affidavit of Joseph D. Kronz, M.D., Docket No. 50-5.) The cause of death is not disputed.  Based on this testimony, the Court finds that Dr. Kronz has met his burden to show that Plaintiff cannot meet the elements of his causes of action against Dr. Kronz.  The burden then shifts to Plaintiff, and he has brought forward no admissible evidence to counter Dr. Kronz's evidence. Accordingly, Dr. Kronz is entitled to summary judgment on all of Plaintiff's claims.

**E.      Individual Prosecutors**

1.      <u>Plaintiff's Claims</u>

Plaintiff alleges that the Canyon County Prosecutor's Office told the Canyon County Coroner's Office not to conduct a drug test on the victim.  Plaintiff alleges that prosecutors maliciously prosecuted him and violated his right to discovery, disclosure, due process, and compulsory process.  (Amended Complaint, p. 4, Docket No. 17.)  Plaintiff further alleges that prosecutors threatened Plaintiff and his attorney.  Plaintiff is also alleging that prosecutors collaborated with other Defendants to secure a conviction by destroying, concealing, and withholding exculpatory evidence.

2.      <u>Prosecutorial Immunity Principles</u>

A prosecutor is absolutely immune from damages arising from the performance of the traditional functions of an advocate.  *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 424-25 (1976). Absolute immunity therefore applies when a prosecutor performs traditional prosecutorial functions in connection with hearings, such as drafting affidavits, selecting the information to put into them, determining whether evidence meets the probable cause standard, deciding to file charges, and presenting affidavits and evidence to the court.  *See Kalina*, 522 U.S. at 130-31.

When a prosecutor steps outside of the advocate's role, such as performing investigatory tasks, his or her conduct is protected by immunity only to the extent that any other individual would be protected in performing the same function. Immunity determinations depend on "the nature of the function performed, not the identity of the actor who performed it." *Kalina*, 522 U.S. at 127 (citations omitted).

3.     Discovery, Disclosure, Due Process, and Compulsory Process

Plaintiff has not stated specifically how and when his rights to discovery, disclosure, due process, and compulsory process were violated. Nor has he provided any evidence to show that he can establish the elements of such claims. Even if Plaintiff had facts to support these allegations, he has not countered Defendants' Affidavits stating that they did not participate in the investigation of the case. Because Plaintiff's allegations are related to prosecutorial tasks that would have been taken during a criminal case, Defendants have met their burden to show that they are entitled to absolute immunity for Plaintiff's claims regarding wrongful acts relating to discovery, disclosure, due process, and compulsory process.

4. <u>Instructions to Coroner Regarding Testing</u>

Plaintiff alleges in his Amended Complaint that prosecutors instructed the coroner not to conduct blood tests on Ciarmoli.  Deputy Prosecutors Blessing and Wolff have come forward with affidavits declaring that they were not involved in the autopsy or decisions to test.  Plaintiff has failed to come forward with admissible evidence to show that any of the prosecutors (including Deputy Prosecutor Aaron Bazzoli, mentioned in the Blessing Affidavit) were involved in the investigation; therefore, the prosecutors are entitled to summary judgment because there is no genuine issue of material fact regarding the claim that they instructed the coroner not to test the victim's blood.

5. <u>Threats</u>

 Plaintiff alleges that prosecutors threatened him and his attorney.  He does not disclose the subject matter or context of the threats.  Plaintiff has not obtained an affidavit from his attorney to support this claim.  There being no genuine issue of material fact, Defendants are entitled to summary judgment on this claim.

6. <u>Malicious Prosecution</u>

Plaintiff also alleges that Defendants engaged in malicious prosecution. The elements of a malicious prosecution constitutional claim are as follows: (1) "that defendants prosecuted [plaintiff] with malice," (2) "without probable cause,"

and (3) "that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (internal citation omitted).

Malice in the malicious prosecution setting is a focus on the intent or state of mind of the party initiating the prosecution, while probable cause is a focus on the party's knowledge. *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030-31 (9th Cir. 2008). Therefore, "[t]he probable cause inquiry is objective, asking whether a reasonable person would have thought that the claim was legally tenable "without regard to [her] mental state," while the malice inquiry focuses on "the subjective mental state of the defendant in instituting the prior action." *Id*. at 1031 (internal citations and punctuation omitted).

The Idaho Criminal Rules govern preliminary hearings where probable cause is determined:

> "Unless indicted by a grand jury, a defendant, when charged in a complaint with any felony, is entitled to a preliminary hearing." *Idaho Criminal Rule 5.1(a)*. "If from the evidence the magistrate determines that a public offense has been committed and that there is probable or sufficient cause to believe that the defendant committed such offense, the magistrate shall forthwith hold the defendant to answer in the district court. The finding of probable cause shall be based upon substantial evidence upon every material element of the offense charged; provided that hearsay in the form of testimony, or affidavits, may be admitted. . . provided that the magistrate determines the source of said evidence to be credible." *Idaho Criminal Rule 5.1(b)*. At the preliminary hearing, the defendant "shall be entitled to

cross-examine witnesses produced against the defendant at the hearing and may introduce evidence in defendant's own behalf." *Id.*

Where a magistrate judge has found probable cause, that "constitutes *prima facie*–but not conclusive–evidence of probable cause." *Awabdy*, 368 F.3d at 1067. Countering the probable cause element of the malicious prosecution claim, Defendants have shown that the magistrate judge in Plaintiff's case found there was adequate probable cause to charge him with first degree murder. (Affidavit of Gearld Wolff, para. 5, Docket No. 50-9.) Plaintiff has not provided any admissible evidence rebutting the magistrate judge's probable cause finding, such as evidence that "the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *See Awabdy*, 368 F.3d at 1067. The Amended Complaint's bald allegations of fabrication and concealment of evidence and other bad faith actions of Defendants are not enough to withstand summary judgment. *Celotex,* 477 U.S. at 324.

Countering the *malice* element of the malicious prosecution claim, Defendants proffer evidence from Gearld Wolff, the prosecuting attorney who screened Plaintiff's case for prosecution. He declares:

> At the time I screened the case, there were no toxicology reports from Ciarmoli. Prior to March 2006, I screened hundreds, if not thousands, of potential criminal cases. Rarely are toxicology reports available at the time cases are screened. Further, in this case, even if toxicology reports had shown that Ciarmoli had alcohol or

drugs in his system at the time he was killed, it would not have altered
my decision that charges should be pursued.

(*Id*., para. 4.)

Further, Wolff declares that Plaintiff's case was handled in the same manner

as other criminal cases:

> The Canyon County Prosecuting Attorney's office did not treat
> criminal defendants who claimed self-defense any differently than any
> other defendants with regard to whether toxicology testing was
> performed. Investigative matters, including whether to perform
> toxicology testing, are conducted by law enforcement and the
> Coroner's office. It is, and it was at all times relevant hereto, the
> custom and practice of the Canyon County Prosecuting Attorney's
> office to leave those matters to other agencies.

(*Id*., para. 9.)

Prosecutors Wolff and Blessing declare by affidavit they did not have any

role in the autopsy or testing of the victim's body fluids, and that they have no

knowledge that the Canyon County Prosecutor's Office had any "role in how the

autopsy was performed, the body fluids collected, or what happened to the body

fluids following the autopsy." (*Id*., para. 8; Blessing Affidavit, para 10, Docket

No. 50-7.) The prosecutors state they did not suppress or fabricate evidence, nor

did anyone request that they do so. They deny that any conspiracy to suppress or

fabricate evidence existed. (See Docket Nos. 50-7 & 50-9.)

Here, the prosecutors have proffered sufficient declarations under oath to

meet the initial burden of proof that they are entitled to summary judgment on Plaintiff's claims. The burden thus shifts to Plaintiff to bring forward evidence to support his allegations. This, he has failed to do. There is no admissible evidence before the Court that the prosecutors were involved in the investigation of the shooting, were present at the autopsy, or had any part in dictating which tests were performed on the body fluids and samples collected from the victim.

Neither has Plaintiff come forward with facts showing that the prosecutors conspired or collaborated with other Defendants to secure a conviction by destroying, concealing, and withholding exculpatory evidence. The record does not reflect any facts to support these assertions.

Finally, Plaintiff has not shown that the third element of a malicious prosecution claim has been met–that the prosecution was brought for the purpose of denying Plaintiff equal protection or another specific constitutional right. *See Awabdy*, 368 F.3d at 1066. The Court finds so supporting evidence in its search of the record.

The Court concludes that Plaintiff has failed to provide admissible evidence showing that there is a genuine issue of material fact regarding the malicious prosecution claims. Defendants are therefore entitled to summary judgment on the

claims.[2]

## F.    Conspiracy

The elements of a conspiracy to deprive another of his civil rights are as follows: "(1) the existence of an express or implied agreement among the [defendants] to deprive him of his constitutional rights; and (2) an actual deprivation of those rights resulting from that agreement." *Ting v. U.S.*, 927 F.2d 1504, 1512 (9th Cir. 1991) (*Bivens* action relying on § 1983 case, *Dooley v. Reiss*, 736 F.2d 1392, 1394-95 (9th Cir. 1984)).

To prove a conspiracy between state actors and a private party under § 1983, the plaintiff must bring forward evidence showing "an agreement or 'meeting of the minds' to violate constitutional rights." *Fonda v. Gray*, 707 F.2d 435, 438 (1983) (citation omitted).  Each conspirator "need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id*.  A  plaintiff cannot "defeat the properly supported summary judgment motion of a defendant charged with a conspiracy without offering 'any significant probative evidence tending to support the complaint.'" *Anderson v.*

---

[2] "Malicious prosecution actions are not limited to suits against prosecutors but may be brought . . . against other persons who have wrongfully caused the charges to be filed." *Awabdy,* 368 F.3d at 1066.  The Court further concludes that there is no admissible evidence that any of the other defendants who are not prosecutors engaged in acts that could constitute malicious prosecution.

*Liberty Lobby*, 477 U.S. at 256.

As set forth directly above, Defendants have provided sufficient testimonial evidence that no conspiracy existed among them. Plaintiff has provided no admissible evidence to counter Defendants' Affidavits. As a result, Plaintiff has failed to show that there is a genuine issue of material fact on this claim, and all Defendants are entitled to summary judgment on the conspiracy claims.

## G.    Canyon County Prosecutors Office

The law is clear that a local governmental entity may not be sued except where it is alleged that the execution of a government's policy or custom inflicted the injury of which Plaintiff complains. *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978). That is, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). There is no respondeat superior liability under § 1983. *Id.*   Requisite elements of a § 1983 claim against a municipality are the following: (1) the plaintiff was deprived of a constitutional right; (2) the county had a policy; (3) the policy amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (citing *Van Ort*

*v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996) (internal quotation marks omitted)).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Monell*, 436 U.S. at 691. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).

Here, Plaintiff has failed to bring forward any evidence showing that a constitutional violation occurred, much less that a county policy was behind the violation. As a result of all of the foregoing, the Canyon County Prosecutor's Office is entitled to summary judgment.

## H.    State Law Claims

Plaintiff provided a "laundry list" of state law claims in his Amended Complaint, without specific supporting factual allegations. The Court previously informed Plaintiff that he could not proceed unless he showed that the state statutes provided for a private cause of action. In any event, for all of the reasons set forth above, Plaintiff has not provided sufficient evidence to show that he can proceed to jury trial on any state-law cause of action, whether arising from the state

constitution, statute, or tort law.  As a result, his state-law claims are dismissed.

## PLAINTIFF'S MOTIONS

In August 2009, after the close of discovery (January 30, 2009) and after Defendants filed their Motion for Summary Judgment (April 30, 2009), Plaintiff filed a Motion for Continuance.  (Docket  No. 55.)  He stated that his foot is broken, and he was unable to work on his case for a long time.  In addition, he says that he is disabled, homeless, pro se, indigent, on pain medication, and involved in several other cases.   Four months after the Motion for Summary Judgment was filed, Plaintiff filed his Objection.  Good cause appearing, the Court will construe Plaintiff's Motion for Continuance as a motion for extension of time to file a response to the Motion for Summary Judgment, and grant Plaintiff an extension of time through the date of the filing of his Objection on August 18, 2009.

Plaintiff filed a Motion for Jury Trial and Trial Setting. (Docket No. 52.) Because the Court has determined that Defendants' Motion for Summary Judgment shall be granted, the case will be dismissed before trial.  Therefore, Plaintiff's Motion is moot.

Plaintiff has filed a Motion for a More Definite Statement.  (Docket No. 57.) A Motion for a More Definite Statement is designed to permit a litigant who needs to respond to a pleading to seek clarification of a pleading for the purpose of

preparing a response.  *See* Fed. R. Civ. P. 12(e).  Here, Plaintiff is not entitled to

file a reply to the Answer unless the Court orders one, which it has not.  *See* Fed.

R. Civ. P. 7(a)(7).  Therefore, his Motion is moot.   Defendants' defenses are

clearly set out in their Motion for Summary Judgment and accompanying papers,

and Plaintiff had four months to file a response.  (Docket No. 50.)  Therefore, the

Motion for a More Definite Statement is moot.

Plaintiff has filed a Motion to Strike Answer to Complaint.  (Docket No.

58.)  Defendants' Answer is legally sufficient and will not be stricken.

Plaintiff has filed a Motion for Request for Writ and for Plaintiff to Have his

Legal Paperwork While Incarcerated.  (Docket No. 59.)  Plaintiff filed his

Objection prior to being incarcerated.  He has not shown that he is actually being

denied his legal paperwork or access to the Courts regarding this particular case.

Plaintiff is required to use the jail grievance system if he is having an access to the

Courts problem.  The United States Supreme Court has cautioned the federal courts

not to interfere with the day-to-day operations of the prisons, especially those

things related to security, a task which is best left to prison officials who have

particular experience in dealing with prisons and prisoners.  *See Turner v. Safley*,

482 U.S. 78, 89 (1987).  Therefore, Plaintiff is required to follow the jail's rules

concerning legal materials and access to the legal resource center.  This Court

cannot issue orders in an instance where Plaintiff is anticipating that an issue will arise. Further, it is not necessary for Plaintiff to file anything further in this action. The pending motions were fully briefed prior to Plaintiff's incarceration.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.    Defendants' Motion for Summary Judgment (Docket No. 50) is GRANTED. Plaintiff's case is DISMISSED with prejudice.

B    Plaintiff's Motion for Jury Trial and Trial Setting (Docket No. 52) is DENIED as MOOT.

C.    Plaintiff's Motion for Continuance (Docket No. 55) is GRANTED to the extent that his Objection (Docket No. 56) is considered timely filed.

D.    Plaintiff's Motion for a More Definite Statement (Docket No. 57) is DENIED.

E.    Plaintiff's Motion to Strike Answer to Complaint (Docket No. 58) is DENIED.

F.    Plaintiff's Motion for Request for Writ and for Plaintiff to Have his Legal Paperwork While Incarcerated (Docket No. 59) is DENIED as MOOT.



DATED: **February 20, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge